The oral argument calendar for this panel this week. We have three cases this morning. I anticipate taking a break after the first two, a short break, and then return for the final. We have a lighting system that I believe you should all be familiar with. It is important to keep up and notice when the yellow light comes on, giving you two minutes left to go. The red light means you have no time left to go unless we give you some, so please finish your sentence and we'll let you know if you look like you still want some more time, whether we'll give it to you or not. Remember that rebuttal is for rebuttal only. One final point, if you haven't argued here in a while, the microphone is now at a somewhat sensitive location, unless I am mistaken, that it is what is in the middle of the podium, so stay behind the light, stay at that microphone, and that way we can record your arguments, not just for posterity, but for our use in working on the case. First case this morning is United States of America v. Vicki Niki Bean. Good morning. May it please the court, opposing counsel, my name is Betty Merrick. I represent Mr. Bean in these proceedings. I also represented Mr. Bean at the trial in the court below. We have raised three issues in our brief. The first argument, and actually the first two, revolve around the search of Mr. Bean's vehicle when it was parked in the driveway behind the trailer of his house. It was a warrantless search, and the law enforcement officers searched the vehicle. The final issue involves the statements that Mr. Bean gave at the jail after he had been arrested. The district court below concluded that the stop of Mr. Bean's vehicle was a traffic stop. We have taken issue with that in our brief, alleging that it is not, in fact, a traffic stop. At the time that Mr. Bean was approached by law enforcement, he had already parked the car in his driveway and was approached by the law enforcement officers, ordered to the ground, handcuffed, and placed in the back of his car. The officers on the scene, Officer Mills and Officer Crooks, did not believe that they had probable cause to search the car. They asked for consent. Mr. Bean's wife, who had come out of the trailer, refused to give consent to search the vehicle. By that time, the canine handler had arrived and decided to run the dog around the parked vehicle to establish probable cause in order to search the car. What significance, if any, is there to their contention that it was a traffic stop? Well, the significance would be the line of cases, starting with Cavallaris and the recent case of Rod Reig, which is the traffic stop, extended due to the dog search. And we don't have any of those factors here, and so I maintain that we should follow the line of cases dealing with the parked car and the line of cases with the defendant already in handcuffs, so he's not going anywhere. He's in the back of the police cruiser, waiting for them to determine probable cause. Let's say an officer witnesses a traffic violation, follows the violator down the road, and they happen to be very near their own driveway. And so by the time the officer is at the vehicle, they've parked it in their driveway. Is that a traffic stop? I think under that hypothetical, it would be a traffic stop because the officer has observed a traffic violation and perhaps has just waited for whatever reason. Well, he saw the guy run a stop sign, but he did it a quarter of a mile from his own driveway. So by the time the officer is able to get him to see the blue light, he's in his driveway. Well, McLaughlin also sped away, I think. The officer activated his lights and was trying, as I recall, trying to stop McLaughlin, and he didn't stop. In this case, Mr. Bean didn't even know the officers were pursuing him. He just happened to be headed home, and they interrupted their normal traffic. They were headed to the Mill Street Apartments. They got a dispatch that said he had left their small town of Hainesville. They knew where he lived, so they headed to his house. They just happened to encounter him as he pulled into his driveway. They didn't observe any traffic violation. Officer Mills and Officer Crooks both said they wanted to stop him, and my assertion is really it's almost a Terry stop. They wanted to stop him to further their investigation, but they never observed any traffic violation whatsoever, and the reason they stopped him was to ascertain whether or not he had a gun because that's what had been reported. Then, later, they run the drug dog around, although there's been no allegations, no dispatch about him selling drugs or having drugs. They know his reputation, but there are no facts. The use of the word traffic stop is not some indication that we're talking about a traffic violation. I'm sorry? The use of the word traffic, when we say traffic stop, is not some indication that there's been some traffic violation. That's not what traffic means when we talk about traffic stop. I'm saying that that is exactly what we mean, is that there's been a traffic violation, and this was not a traffic stop because there was no traffic violation. Oh, but it's a vehicle stop, and that's the question. Can it be a vehicle stop under these facts? That is, when he has not been pursued, they come from opposite directions, he pulls into a driveway and stops, and then you say, okay, is that or is that not a vehicle stop when he has already stopped at his home in his driveway? And I'm saying no, that that is not a vehicle stop. All right, so take it from there. Then what are the other bases that we have? We have a, the car is stopped at his home, but in the driveway at the edge of the street, so it's not within the curtilage, and we have basically an open field stop, don't we? At that point, I think we look at the line of parked car cases, and I think that, Mr. Beale— Well, they're all over the map, and you have this parked car case, but then you have the intervention of a sniffing dog. A drug dog. And that's been held not to be a— A search under the Fourth Amendment. Right. So you combine a stopped vehicle not in the curtilage with a non, not an unconstitutional drug sniff that gives probable cause. Why isn't that the end of it? Well, I disagree. I think that there was no reason to run the drug dog around the car, and I would agree with the dissents in the Cavallaris case, which say that we need to afford the Fourth Amendment protections to the drug sniff cases, the dog sniff cases, because this is exactly what we end up with. We might agree with the dissent, too, but it's still the dissent. I agree. And I think that the court is headed in a different direction. I think we've seen that with the Rodriguez case, the recent case, when they talk about extending the traffic stop, they go into some of the protections and the dog sniff, and that, I think that it was impermissible to run the drug dog around the car. Generally, the dog sniff cases has to do with the officer having some articulable fact about why he thinks there are drugs in the car, either air fresheners hanging from the window or the stories don't match. We don't have any of that in this case. Both officers candidly admitted on the stand under cross-examination that they did not believe they could search that car, and they only used the drug dog to establish the probable cause. And all they had was a 911 call that said Mr. Bean had a gun. Well, let me ask, what's your best authority, other than dissents, that the use of the dog on this car was improper? I'm not talking about the search that then followed, but just the initial use of the dog to indicate the possible presence of drugs in this car. What's your best authority that there was anything improper with that? It would simply be the dissents. Okay. In the Cavalera case. Well, let's speculate that this Court will apply the majority opinions for now. Where do we go from there? Let's say the sniff of the car was constitutional. Where are we? Well, then, if the sniff is constitutional, I think that established the probable cause. Probable cause? To search the car. Why? Is there not a possible warrant requirement? I'm sorry? Wouldn't there be a possible warrant requirement? There would be, and I think the ease of obtaining the warrant mitigates in favor of suggesting that the officers should have obtained a warrant. Okay. They then searched the house for hours after they had searched the car. That was all suppressed, all of the evidence obtained from the house. So . . . Which is to say that you don't concede that the search was constitutional. No, I do not. The case is over. I'm sorry. I didn't mean to interrupt. I'm just saying you're not conceding . . . No, I'm not conceding that it's constitutional. I'm saying that that was the hypothetical posed by Judge Salamone. All right. If it's . . . The hypothetical is it will apply the majority opinion. If the majority opinion applies, that is correct. And I think we're seeing some movement in this area. I think it's a slippery slope. It's a tricky area. And in this case, I think that the officers had no reason to run the dog around the car except that the dog was there and they needed some reason to search that car. They showed up there with the idea that they were going to search that car. But we can't get into the extending the traffic stop issue because we didn't really have a traffic stop to extend. And that was the first argument that I raised in my brief. The district judge classified this as a traffic stop and then the opinion flowed from there. And we do not agree that it was a traffic stop. So if the search was constitutional, your best argument is they should have . . . I mean, if the use of the drug dogs was constitutional, the sniff, then your best argument is they should have gotten a warrant to do the search of the car. Is that it? Well, my argument is that this really is a Terry stop and that they had no reason to bring the drug dog because they didn't have any facts to establish that that's what they needed to be searching for. They were looking for a gun. No, because if the drug . . . a drug dog as such, not a general dog, but a drug dog as such is not a violation of the Fourth Amendment, then there's no problem with having the drug dog sniff. And the question is whether then there were exigent circumstances. You've established probable cause. Are there exigent circumstances to not bother with a warrant? And if we follow that line of thinking, then do we allow the police to run a drug dog any time they stop any car ever for no reason at all? Because here they didn't have a reason to run the drug dog. Mr. Baines handcuffed. He's in a parked car. All they're looking for is the gun, and so they're running a drug dog. Do they need a reason to do a drug dog? I think they have to have some reasonable suspicion that there's something and some articulable facts. And in this case, they don't have anything. They're looking for a gun. Officer Good admitted his dog is not trained to smell weapons. And so at this point, then the drug dog can be run at any time, anywhere, simply because the officer decides to do it in anybody's driveway. Now, getting back to the second part of your question, I think, was the exigent circumstances. I don't think we had exigent circumstances in this case. Mr. Baines, once again, is handcuffed. He's in the back of the car. He's not going anywhere. The car's not going anywhere. It's between the trailer, the fence. The wife is in custody. Nobody else is there. We don't have a third party who might destroy evidence. The officers remain on the scene for another couple of hours. And so I don't think we have the exigent circumstances that the evidence could have been destroyed. I think they could have gone and gotten a warrant at that point to then search the car. And if that led to the search of the house, which is another issue. Not before this court today. So I think they could have, they did have time to get a warrant. Do you want to separately address the statements that were taken? Well, the statement has to do with just the fruit of the poisonous tree argument. Mr. Baines, once he's arrested, after the search of the car and the search of the house, everything from the house was suppressed. He's taken, but he doesn't know that at the time, he's taken to the police station and gives a statement to Officer Malone. While the statement does only concern the weapon in the car, my assertion is that it's fruit of the poisonous tree because there had been no break in the causal connection between everything that had just happened to him. He had been arrested, his wife had been arrested, his car had been searched, his house had been searched, and he gives the statement. And I think that because there's no break in the causal connection, the entire statement should have been suppressed. But if we don't find the tree is poisonous, then that... That argument fails, yes. I will concede that. Got anything else for us? That's all. All right. Thank you. Thank you. May it please the Court, my name is Mignon Griffin, and I represent the appellee in this case. Your Honors, I would assert that the officers did not need a basis to run the drug dog over the car that was parked in what was clearly not the cartilage of the home. I supplied the Court with the photographs, and you can see clearly that it was just a patch of white rock or white gravel alongside the road. And then the issue becomes whether, as the Court said, whether or not the officer should have obtained a warrant after the dog alerted four different times or in four different locations on the car. And I would say . . . If I have any concern about whether or not this is some kind of an open fields issue or matter where the open fields doctrine is applicable, I don't need to be concerned about that in this case. I believe that it is . . . I know it sounds odd to call it an open field since it is clearly in the man's yard, but open fields is just anything that's not home or cartilage, as the Supreme Court has explained. And there's been no case in the Fifth Circuit, and I . . . first of all, I believe it's a very fact-intensive determination whether or not something is cartilage or not. There's been no Fifth Circuit case to date that has found a driveway to be in the cartilage of a home. I'm not saying that that means there can never be a driveway that is in the cartilage. Let's assume I agree with you it's not cartilage. My only question is whether or not the open fields cases and doctrine has anything to do with this case or not. Well, it is in the sense that the police can go onto the open fields, and the things they do there, even if they are trespassing, are not . . . There's no third category, is there? There's no . . . It's either cartilage or not, and the not is called, for lack of a better term, open field. Yes, Your Honor. It's the home. It's the cartilage, the area immediately around the home, which, as the Supreme Court said, is protected because it allows a glimpse into what is occurring in the home. And then there is . . . everything else would be the open fields. And there, even if the officers are trespassing, the things they do are not in violation of the Fourth Amendment. There's . . . Well, there are some limitations on what can occur in an open field. Isn't that correct? There are cases that provide that there are some limitations on that. And I'm not aware of any of those that apply in this case, Your Honor. I know I cited to a case . . . Could you take a bulldozer onto the property and just start digging it up? I'm sorry. I didn't mean to interrupt, Your Honor. That's all right. Clearly, they could not go on and destroy the property, but they could walk onto it, and that's what they did here. They walked onto the property . . . And dig it up. If you were looking for something that you thought had been buried, perhaps. Well, I can't imagine any lawyer allowing the police to do that. I would hope they would have consulted with their prosecuting attorney before doing that. I don't know. But you can imagine them allowing the police to use a drug-sniffing dog where there's been a report that somebody pointed a gun. I think . . . Because that's what this case is. The report was that somebody pointed a gun, and the fact is they used a drug-sniffing dog around the car. Yes, Your Honor. He did. Because a drug-sniffing dog is not a search, so we're not talking about doing something that has not ever been addressed by case law. The case law has already clearly held that it's not a search. And the officers did know Mr. Bean by reputation as . . . Counsel, I'm driving down the street yesterday here, and I see a series right along the main thoroughfare, a series of duplexes right off the main thoroughfare. And in front of each one of the duplexes is a little driveway where I assume the occupant of that abode parks their vehicle. And literally, there is no more than about eight feet from the back of the car to the main thoroughfare. There's a bit of a sidewalk. They drive right there, and they park right in front of their duplex. And so these people, depending on how you view it, fortunately or unfortunately . . . Fortunately, they don't have to go very far to be on the main thoroughfare. Unfortunately, they're right off the main thoroughfare. And so, from the front of that duplex to the street . . . And I mean, I'm guessing I'm not an expert on inches and feet, but maybe eight feet. So, if I adopt your view about the use of a drug-sniffing dog, and maybe the view of all these other people . . . An officer could have a drug-sniffing dog on a six-foot leash, and just walk down the sidewalk . . . Where the dog is going to be right at the back of everybody's vehicle, who lives in one of these duplexes on this street. And, if the dog alerts, they can search that vehicle. I'm not aware of any case law that would hold that that is not appropriate, Your Honor. But, that's not this case. This is not a random search of just randomly parked cars. These officers had a reasonable suspicion that Mr. Bean was involved in criminal activity . . . And, therefore, a reason to be there investigating him. And, I mean . . . So, all they've got to have is a reasonable suspicion of any kind of criminal activity . . . And, they get to use a drug-sniffing dog. I don't do drug . . . I did not do drug cases in the district court. But, I've handled enough appeals dealing with car stops, where they call drug dogs all the time. Just because of how they think the people are acting. So, in my hypothetical, the officer has a reasonable suspicion that there's some criminal activity on that block. With all these duplexes. Is it okay to take the drug-sniffing dog and walk down the block? I don't know, because I don't think that's this case. And, I haven't done the research on that specific issue. Well, I guess my concern is adopting your view in this case, arguably, would allow that officer to do exactly what in my hypothetical. And, I understand . . . What seems to permit. And, I understand that, Your Honor. And, I don't want the police walking through my neighborhood with drug-sniffing dogs, either, on the sidewalks. But, that's not this case. In this case, the officers had a reason to be in Mr. Bean's yard. And, one of the officers who responded to the call just happened to be a canine officer. So, it didn't extend the stop any by having him there. Let me ask you about what you just said. There was no . . . Are you saying there was nothing intentional about having a drug dog brought to this property? It was happenstance, and so they decided to use the dog? Is that what you're saying the evidence supports? Yes, Your Honor. Yes, there is no indication that the drug dog was called for. Apparently, the officers were together. For some reason, all the officers of the department were together at the Chief's house. The call came from dispatch that Mr. Bean was at the Mill Street Apartments with a gun, and all of the officers responded. And, that included the canine officer. This is not a case where they had to call and wait on a canine officer to show up, as is typical in a traffic stop. Well, let's say we get beyond the use of the drug-sniffing dog. What exception to the warrant requirement would you say is applicable here? I believe the general automobile exception applies, Your Honor. Was that presented in district court? I think your reply to the motion to suppress in district court would not show the use of the automobile exception as an argument for others to observe as well. Does that matter? Can you raise it now on appeal? No, Your Honor, because the court can uphold the district court for any basis supported by the record. And, I did address that in my brief, the fact that the automobile . . . Appeal that has certainly been discussed. Yes, sir. And, I would submit that this case is not bound by the Coolidge case, where the Supreme Court struck down the warrantless search, or suppressed the evidence from the warrantless search of the defendant's own cars parked in his own driveway. In that case, the court was very specific that it was dealing with a long-term investigation with a defendant who knew he was under investigation, and with cars that were routinely parked there, and that there was no indication of any intent to . . . or any effort to destroy evidence or remove evidence. Since then, there have been several cases, including the Butler case in the Fifth Circuit, where the officers were responding to a report of a crime that had just occurred. And, in Butler, they followed a tracking device back . . . a tracking device in money, bait money from a bank robbery, and they followed the money back to the defendant's home and were . . . properly searched his car without a warrant in his . . . I believe it was in a carport. It was not even just in the driveway. I believe it was in the carport. And, in Coolidge, the Supreme Court specifically said that hallmarks of the types of cases where the automobile exception apply, include when the police are looking for firearms. And, that is what the police were looking for here. Well, see . . . and that's one of my problems, Counsel, because . . . let's assume I could be very comfortable that there was sufficient probable cause to conduct a search, because they had a report that someone driving a Honda had brandished a weapon. And, they pull up. He's driving the Honda. They place him under arrest. And, they search the car to look for the gun that was appointed by the person who was driving the Honda. What complicates this is, we have a couple of officers who say, we had no probable cause to search the vehicle. That's why . . . now, I know you're going to tell me the officer's intent doesn't really matter. But, intent or not, it's really hard to ignore an argument below that . . . when the officer says, I had no probable cause to search the vehicle, and then the officer says, well, let me put Eddie on it, the dog, and then the dog sniffs, and then they search. So, what I'm saying is, on the motion to suppress, the defenders were looking at your view, that there was no probable cause, without the dogs sniffing. Yet, I, on appeal, make a determination that there was probable cause, in spite of what the officer said. There was probable cause, therefore, everything was fine. That's what's complicated for me. Make me comfortable with ignoring what the officer said, that there was no probable cause for this. Well, I found the officer's testimony to be a little confusing, because they did believe they had probable cause to arrest him for that crime. And, if they believe they had probable cause to arrest him for that crime . . . Which crime? For both, resisting arrest and brandishing, aggravated assault for brandishing. Well, because what they said is, at the time they arrested him, they said the arrest was for resisting arrest. Right? Isn't that what they said was the reason? I believe Officer Mills said he arrested him for both. That's my recollection, Your Honor. You may be right. I would stand corrected if . . . All right. I know he was ultimately booked for both, but obviously, by then, they had found the firearm. But, my recollection is that Officer Mills testified that he was arresting him for both. But, as . . . Well, if that's true, I could get a little more comfortable. Make me more comfortable. You got anything else? As you said, the officer's subjective intent is not relevant. A lot of officers do use a belt and suspenders approach. They may have a warrant when they go out and search a house, and yet they still ask for consent before they go in, because they want to make sure they have covered every possible basis under which they could get the evidence in. So, I don't know why they . . . If he thought he had probable cause to arrest, that would have given him probable cause to search, and yet they did the drug dog, too, just to make sure, as I said, belts and suspenders. Assume, for the sake of this, hypothetically, if you will, if not actually, that the non-unconstitutional dog search of the car gave probable cause. Don't assume further that even with probable cause, you need exigent circumstances to avoid the getting of a warrant, seeking a warrant, and waiting for that. Do you have exigent circumstances here? And, if so, what are they? I think under the case law, Coolidge and then the following Fifth Circuit case law, I think that the hot trail that the officers were following, which led them directly to the vehicle, constitute exigent circumstances. I think that the presence of the gun constitute exigent circumstances. I think the presence of the third parties constitute exigent circumstances, and those have all been identified by the case law as reasons that the officers . . . Do we have the possibility of somebody else destroying evidence? They don't know who's in that house, do they? Besides the wife, possibly. The wife was in the yard, and at that point she had not been taken into custody, is my recollection of the facts. At the time they searched the car, she had not been taken into custody. So she was there, and she was quite animated, for lack of a better word, to the extent that one of the officers . . . When you say taken into . . . I'm not sure what you mean. Because my best recollection of what the record says is by that point, they had her in some kind of . . . I don't know what they did to her, but they had restrained her, or they had done something to her. Because she came out, at least apparently, yelling and screaming. She did come out yelling and screaming, Your Honor. And the officers initially went over and just talked to her. She had a medical emergency. They called the ambulance crew. I believe once the ambulance responded, she declined to have treatment. But then she had some type of interaction with the chief. But my recollection is that by then, she was . . . they had already searched the car by then. By the time she . . . Well, if . . . you know, following up on that, it's the likelihood that during the time it would take to get a warrant, they would have to release her, and she'd have access to the house then. Yes, sir. And the case law does . . . the Fifth Circuit case law does say that the presence of the third parties is in exigent circumstances. I apologize. There's no knowledge whether there may be a fourth party in that house. That is correct, Your Honor. At that time, they did not know who else was going to be present in the . . . would be . . . was present inside the mobile home. I'm concerned about whether there are any limits to this. The automobile exception, historically, I believe, was for vehicles stopped on open highways or in places that could not be . . . that were not very secure. That exception, though, has been expanded to situations of . . . a recent case by us that you cite, U.S. v. Fields, Recents and the Eye of the Holder, 2006, talks about the exception applying when vehicles are found stationary in places not regularly used for residential purposes. But to apply it here, the automobile exception in this driveway, basically, is to say if it's a car, the automobile exception applies. What limiting principle would there be? Well, I think the court in Coolidge set that out. If the police . . . if the car is routinely parked there, if the police have no reason to believe that the evidence that they think is in the car will be tampered with or destroyed in any way, then the officers . . . I guess it's more as a part of a routine investigation, especially in Coolidge where the defendant was aware he was under investigation and, therefore, by that time had had ample opportunity to destroy any evidence. Well, one thing that concerns me about the Coolidge facts being applied to a situation like this, it seems the argument could have been made in Coolidge. It's one thing for Coolidge, I guess it is, to be aware that he's under investigation. A lot of people are procrastinators. Once he's in custody, the concern would certainly be heightened for anything that might be incriminating within the car. So at least it seems the argument factually might have made some sense in Coolidge, though there may be details of Coolidge that says otherwise. So I think what you are arguing is if the alternative is to leave an officer watching the car, which to me would be a seizure if the officer ends up being able to do anything, if the wife approached the car to do something, then you never need a warrant. No matter where the car is, so long as there's any possibility, and there almost always will be, that what's inside the car will be tampered with or taken. I think that the case law does support that argument, Your Honor, because in our case we have the aggravating factor, which was recognized in Coolidge, that there was a dangerous weapon. But in Butler we had the money from the robbery, from a bank robbery. I don't recall there being a gun in that case. It was just the money from the bank robbery, and they said . . . Well, aren't you responding to Judge Southwick by saying that there's a division there, and that is exigent circumstances. You can't do it if there aren't . . . Merely probable cause doesn't give you the right to not get a warrant, but if there are exigent circumstances as well as the probable cause, then that might allow you to skip getting a warrant. Yes, sir. I think the regular automobile exception applies to cars parked in a defendant's own driveway as long as there are additional exigent circumstances, such as we had here with the presence of the gun. Even if you don't use the automobile exception, you've got the dog sniffed this. It could have been a storage box instead of an automobile, but it's not in the curtilage. The dog sniffs it constitutionally, and then the question is whether to wait for a warrant is whether there are, in addition, exigent circumstances. I am willing to go as far as if it's a car. I haven't done the research on whether it's just a storage box, but I feel comfortable with the fact that it's a car, given the automobile exception, given the exigent circumstances under this case, that it was appropriate for the officers to search the car. I guess my question is, to use the terminology that Judge Wiener correctly is using, is that in your view, if we apply it here, there almost always will be exigent circumstances. If the factual situation is the officers would otherwise have to leave the scene without knowing who might affect, who might take the evidence that they have discovered through probable cause. I think as long as the officers are following a hot lead, a hot trail, as the cases have described it. I apologize, my time is out. But I think as long as the officers are following a hot lead, then that is all that is necessary. Thank you, Counsel. I'll start with the hot trail and then come back to Judge Graves' hypothetical, if that's permissible. I disagree that the officers were following a hot trail in this case. What they have is an anonymous 9-1-1 call. That's it. They don't have any independent evidence. They didn't observe anything. They don't have someone who says, my name is, I'm at the Mill Street Apartments and I'm calling to report. They simply have a 9-1-1 call that says, someone's waving a gun, and then another call that says, the someone waving the gun is Ricky Bean and he's left. That's all they have. And so they respond by arriving at his residence while he has simultaneously arrived. They don't observe anything independently. And in all of the other line of cases, generally the officers observe the house for a few minutes. They observe activity that's happening there. So they have some independent fact that gives them reason to believe whatever has been reported. Here all they have is Mr. Bean in his gray Honda, which everyone in Hainesville knew that he drove. And so he's there. He's in his driveway. He is ordered immediately out of the car and arrested. His wife comes around the corner, and she, because of her attitude, her animated form, her belligerence, she is handcuffed. The EMS arrives to give her medical attention. That's while the search is going on of the car. There are no other third parties there. They don't know whether there are third parties. Well, but while all of this is happening, they can ascertain whether or not there are third parties. And I don't think just the mere fact that there might be a third party. They could have gone in the house? I think they certainly could have knocked on the door. Ms. Bean, they asked her, Chief Smith asked who was in the house, and she replied no one. So I think that they were taking her at her word. I also would like to point out that for the most part the court has found all the testimony of these officers to be incredulous by the time we get to the search of the house. And so we're giving a lot of credence to the statements of the officers on the front end of this case, which I'm not sure that they deserve based on what happened in the later testimony. And so I don't think they're on the hot trail. Generally, the person is not in custody, and in this case both Mr. and Ms. Bean were placed in custody. She was only out of custody, and that's improper. She wasn't out of custody. She was not handcuffed while EMS was dealing with her. But once they were finished, she was handcuffed and placed in the back of one of the other units while they continued to search the premises for several hours after the search. So I think that there was no risk there for the car, and while all of this was going on, I think that the officers were there. They don't really have the exigent circumstances. They could have gone and gotten a warrant at that point because they were there observing the car, but instead they chose to run Eddie around the car simply to see if he was going to alert or not, although they had no tip, no evidence, no facts that there might be drugs in the car. Except he had a reputation for being a drug dealer, didn't he? Well, the officers admitted that they knew he had a conviction in Texas for being a drug dealer, but none of them had ever arrested him in Hainesville. He had been convicted in Texas and served his time, and they were aware of that, and that's why they decided to run the dog. But both officers admitted that without the dog, they didn't have any reason, they thought, to search the car. I just have a few minutes left, so I'll get back to Judge Graves' hypothetical about the duplexes and the driveway, and I think that's exactly the problem that we have with these facts, is that the officer is allowed to run his drug dog around the car because we're saying you don't need evidence of drug activity. You can just run your drug dog, and if he alerts, that gives you probable cause. It doesn't matter that your car is not parked in the curtilage and it's in your driveway because that's not curtilage. That's where we are with this opinion and with these facts. All right then, counsel. Thank you. I appreciate both of you and your arguments this morning. This will help us in the resolution of this case. I'll call the second case of this morning, Ramirez-Mejia v. Lynch.